UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIFFANY LIPKOVITCH,

    Plaintiff,

v.

COUNTY OF WAYNE, POLICE
OFFICERS ASSOCIATION OF
MICHIGAN, and BENNY N. NAPOLEON,

    Defendants.
_____/

Case No. 10-13961-DT

HONORABLE DENISE PAGE HOOD

## OPINION AND ORDER REGARDING DISPOSITIVE MOTIONS
## AND
## ORDER DISMISSING ACTION

### I. BACKGROUND/FACTS

On October 4, 2010, Plaintiff Tiffany Lipkovitch ("Lipkovitch") filed the instant action against Defendants County of Wayne ("Wayne County"), the Police Officers Association of Michigan ("POAM") and Benny N. Napoleon ("Napoleon"). Lipkovitch alleges in her Complaint: Violation of 42 U.S.C. § 1981, Race Discrimination in Enforcement of Employment Contract (Count I); Violation of 42 U.S.C. § 1983 (Count II); Violation of the Michigan Elliott-Larsen Civil Rights Act (Count III); Breach of Duty under Art. 1, § 17 of State of Michigan Constitution to Conduct Fair and Just Investigation (Count IV); Violation of Plaintiff's Liberty and Property Interest in Violation fo the 14th Amendment (Count V); Abuse of Discretion in Discriminatory Selective Enforcement of Progressive Disciplinary Policy (Count VI); Breach of Duty of Fair Representation against the POAM (Count VII); and, Failure to Investigate against the POAM (Count VIII).

Since March 4, 1996, Lipkovitch had been a deputy sheriff with the Wayne County Sheriff's Department. Lipkovitch's employment relationship was governed by a Collective Bargaining

Agreement ("CBA") between Wayne County and the POAM. Lipkovitch was terminated effective May 24, 2010 due to a series of misconduct charges, including a charge of fraternization with known felons who were inmates housed at the Michigan Department of Corrections ("MDOC"). The MDOC submitted a complaint to the Wayne County Sheriff Internal Affairs alleging:

> It was discovered while listening to Jackson 36626 4, Davis 598803 and Moore 471608 phone calls that they were involved in a smuggling scheme with the assistance of a female Wayne County Deputy Sheriff, who is employed at the Wayne County Jail in Detroit, Michigan. The Sheriff used two cell phones with numbers (313) 804-0274 and 734 444-9282, to link the prisoners on conference calls with each other at the SCF and WHV correctional facilities. Jackson or Moore would call from WHV and approximately 3 or 5 minutes later, Davis would call the exact same cell phone number that the sheriff would use to link them to the conference call. They used their cell phone conference call system to circumvent the phone policy and set up a smuggling business with the help of a Wayne County Deputy Sheriff. The prisoners smuggled commissary items and illegal drugs by using transferring prisoners from each institution. The transferring prisoners would place the items in their duffle bags or footlockers to transport to their destination. Once they arrived at the facility, the items were given to Inmates Jackson, Davis or Moore to distribute or retain. The Sheriff also assisted the prisoners in depositing money into other prisoners accounts, purchasing cell phones, passing messages for other prisoners or civilians to other prisoners, giving information about other prisoner s cases, allowing civilians to come to her home to speak with the prisoners on cell phones, sending money to civilians for the prisoners and sending mail and cards to prisoners for Jackson 366264. The Sheriff was also involved with prisoners Charles Meadows-117829-Mound Correctional Facility; Earle Poncietta 425456-Camp White Lake and Natasha Nichols 383030-Wayne/Detroit/Prob/ Par/REP. One or both of the 2 cell phone numbers show on all of the above mentioned prisoners phone list per Embarg prisoner phone services. These numbers have been on some of their phone lists since March 2006. Prisoners Jackson, Davis and Moore were all found guilty of smuggling by major court on April 23rd.

(Doc. No. 20, Ex. 3)

The Wayne County Sheriff's Office thereafter initiated its own investigation by summoning

2

Lipkovitch and her union representative from the POAM, Corporal Richard Perkins, for an Internal Affairs interview on March 25, 2010. Lipkovitch was given her Garrity Rights and then examined regarding the allegations of the MDOC complaint. Lipkovitch admitted knowing inmate Jackson and facilitating calls between Jackson and other inmates. Lipkovitch denied having any involvement with any smuggling scheme or illegal activity between the inmates and denied acceptance of any bribes or contraband. (Lipkovitch Dep., pp. 21-24; Doc. No. 20, Ex. 4, Tr. of 3/25/10 Interview) Lipkovitch admitted that she had knowledge of contraband transported by prisoners. (Doc. No. 20, Ex. 4, Tr. 3/25/10 Interview, p. 11) Lipkovitch also admitted that she contacted Jackson's lawyer on behalf of Jackson; she sent money orders to Jackson; received cigarettes for sending the money orders to Jackson; used the Sheriff's Department to look up information regarding other inmates for Jackson including on the website sugardaddies.com; maintained a relationship with Jackson for three years. (*Id.*, pp. 10-12, 16, 23-24, 29) Lipkovitch submitted a handwritten statement on March 25, 2010. (Doc. No. 20, Ex. 5)

Following the IA interview, Lipkovitch was charged with violating the Wayne County Sheriff's Departments policies and rules based on the MDOC complaint:

    1.   Code of Ethics
    2    Violation of Rules (GM 99-3 Zero Tolerance Incidents
         and 2003-13 Cell Phones)
    3.   Abuse of Position
    4.   Conduct
    5.   Confidentiality/Dissemination of Information
    6.   Conformance to Laws
    7.   Contraband
    8.   Enforcement of Laws and Ordinances
    9.   Fraternization With Persons In Custody and Association
    10.  Personal Associations
    11.  Social Conduct-On Duty
    12.  Unsatisfactory Performances
    13.  Gifts/Guaranties/Bribes/Rewards

      14.     Personal Integrity
      15.     Personal Responsibilities

(Doc. No. 20, Ex. 8)

The Administrative Review and Determination ("ARD") Hearing on the charges was held on May 24, 2010. Officer Gerard Grysko, the Disciplinary Deputy Chief ("Grysko"), conducted the hearing. Second Vice President of POAM, Corporal Deborah Martin ("Martin"), represented Lipkovitch at the hearing. Lipkovitch offered no opposition to the charges at the ARD Hearing. At the conclusion of the hearing, Grysko found Lipkovitch guilty as charged and her employment was terminated. (Doc. No. 20, Exs. 10-11)

At Step 4 of the grievance procedure process, Local Union President Gregory Hattway met with the Wayne County Labor Relations Division to present Lipkovitch's case. On June 7, 2010, the grievance was denied by Labor Relations Analysis Yvonne Holiday-Mickens. (Doc. No. 17, Ex. 8) Martin presented the documents regarding Lipkovitch's disciplinary and grievance proceedings to the POAM for evaluation and determination to proceed to arbitration. (Doc. No. 17, Ex. 5) On July 29, 2010, Marha M. Champine, Assistant General Counsel for the POAM, informed Martin that after reviewing the materials submitted as to Lipkovitch's documents, the POAM declined to pursue Lipkovitch's grievance to arbitration. (Doc. No. 17, Ex. 1)

Lipkovitch thereafter filed the instant lawsuit. Before the Court are various motions, including Motions for Summary Judgment filed by the Wayne County Defendants and POAM, a Motion to Dismiss the state law claims under Rule 41 filed by Plaintiff and Motion to Remand filed by Plaintiff. After the dispositive motions were filed by Defendants, Lipkovitch filed a second lawsuit involving the same Defendants before the Wayne County Circuit Court on October 24, 2011. The Wayne County Defendants removed the matter to this Court on November 17, 2011, Case No.

11-15081. A Motion to Remand is pending in that case filed by Lipkovitch, which will be addressed in a separate order. Briefs have been filed on the pending motions in this case and a hearing held on the matter.

## II.     ANALYSIS

### A.     Summary Judgment Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### C. Wayne County Defendants' Motion for Summary Judgment

The Wayne County Defendants move to dismiss the claims against them filed by Lipkovitch, Counts I to VI. Lipkovitch agrees that Counts I to VI are alleged against the Wayne County Defendants only.

#### 1. Count 1, 42 U.S.C. § 1981

The Wayne County Defendants argue that Lipkovitch has no claim under 42 U.S.C. § 1981 since the exclusive remedy against municipalities and their employees regarding race discrimination is found under 42 U.S.C. § 1983. Lipkovitch responds that individual liability under § 1981 is permissible, as long as the individual intentionally caused an infringement of the rights secured by § 1981.

Section 1981 provides,

> All persons within the jurisdiction of the United States shall have the same right in every State and territory to make and enforce contracts ... as is enjoyed by white citizens and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

42 U.S.C. § 1981. In *Arendale v. City of Memphis,* 519 F.3d 587 (6th Cir. 2008), the Sixth Circuit held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Id.* at 598-99, quoting *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 733 (1989). No independent cause of action against municipalities is created by § 1981. *Id.* at 599. The Sixth Circuit noted that even if it were to hold that an implied cause of action exists against municipalities under § 1981, the rights protected by § 1981 are coextensive with those already protected by § 1983 and there is no substantive change in federal civil rights law. *Id.* at 599, n. 9.

Based on Sixth Circuit law, there exists no independent cause of action of race discrimination against municipalities by § 1981 and, even if such a cause of action exists, the race discrimination claim is analyzed under § 1983. Count I, the 42 U.S.C. § 1981 race discrimination claim must be dismissed.

### 2. Counts II (42 U.S.C. § 1983) and III (Michigan Elliott-Larsen Civil Rights Claim) Race and Gender Discrimination Claims

The Wayne County Defendants seek to dismiss the race and discrimination claims set forth in Counts II and III of Lipkovitch's Complaint. The parties agree that discrimination claims under § 1983 and ELCRA are analyzed under the same legal framework. *See, Schoonmaker v. Spartan Graphics Leasing, LLC,* 595 F.3d 614, 620, 626 (6th Cir. 2010). The Title VII burden shifting approach is applied to a § 1983 equal protection race discrimination claim. *Singfield v. Akron Metro Housing Authority,* 389 F.3d 555, 556-57 (6th Cir. 2007; *Weberg v. Franks,* 229 F.3d 514, 522 (6th Cir. 2000).

Under the burden shifting approach developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972), a plaintiff must establish a *prima facie* case and create a presumption of discrimination by showing by a preponderance of the evidence: (1) that she belongs to a protected class; (2) that she was subjected to an adverse employment action; (3) that she was qualified for the job; and (4) that she was treated differently from similarly situated employees from a non–protected class. *McDonnell Douglas*, 411 U.S. at 802; *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995); and *Wilcoxon v. Minnesota Mining & Mfg. Co.*, 235 Mich. App. 347, 361 (1999). Alternatively, a plaintiff could establish a *prima facie* case by presenting credible, direct evidence of discriminatory intent. *Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111 (6th Cir. 1987). If a plaintiff proves a *prima facie* case, the burden of persuasion shifts to the

employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802. Once the employer carries this burden, the burden then shifts back to plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.*; *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991). The plaintiff may meet this burden by showing: 1) that the stated reasons had no basis in fact; 2) that the stated reasons were not the actual reasons; or 3) that the stated reasons were insufficient to explain the employer's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). The burden of persuasion always remains, however, with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

For purposes of its motion only, the Wayne County Defendants do not dispute the first three elements of the *prima facie* threshold. The Wayne County Defendants argue that Lipkovitch cannot establish the fourth element–the comparable element–since she cannot show that she was treated differently than similarly situated white and/or male officers. The Wayne County Defendants also argue that Lipkovitch cannot show that the same decision maker was involved in the comparables she identifies. The Wayne County Defendants argue that each Sheriff and his administration handled disciplinary proceedings differently. (Doc. 20, Ex. 24) Benny Napoleon served as Sheriff beginning July 27, 2009 and through the date of the filing of the motions.

In response, Lipkovitch asserts that she was treated more severely than her male counterparts because they were allowed to resign or retire without repercussion. Lipkovitch further asserts that she was not given an option of a progressive discipline. (Resp., Doc. No. 22, p. 11) Based on Lipkovitch's response, it appears that she has waived her race discrimination claim since she only argues that her "male counterparts" were given preferential treatment. *Id.*

8

An employee whom a plaintiff seeks to use as a comparable must be similarly-situated in "all of the relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998). The failure to identify a similarly situated employee who was treated more favorably than plaintiff is fatal to the plaintiff's claim under a disparate treatment theory. *Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir. 1992). The similarly situated employee must have the same supervisor, be subject to the same standards and engaged in conduct of comparable seriousness to Plaintiff. *Id.*

Lipkovitch sets forth six Black males and one White male in her response as similarly situated employees: J. Bullox (Black male); R. Nunn (Black male); D. Merriwether (Black male); R. Tillman (Black male); P. Flannery (White male); L. Davis (Black male); and D. Woltz (Black male). (Resp., Doc. No. 22, p. 5) The Court will not consider the six Black females[1] Lipkovitch identified in her response since they are of the same race and gender as Lipkovitch. (*Id.*)

Based on Lipkovitch's response, the Court finds she fails to create a genuine issue of material fact on the similarly situated employee prong of the *McDonnell Douglas prima facie* test. Lipkovitch does not set forth any facts as to the basis of the disciplinary proceedings as to each of the seven male employees identified in her response. Lipkovitch has not shown that these employees had similar charges to those she faced or that the seriousness of the charges faced were similar. In addition, the Court will not consider Bullox or Nunn as similarly situated employees since they were in fact terminated, like Lipkovitch. As to Merriwether, Tillman and Flannery, the Court will not consider these employees as similarly situated because they either resigned or retired. Lipkovitch has not alleged that she offered to resign or retire from her position instead of being

---

[1] N. Rideaux, G. Griggs, C. Dewitt-Brice, D. Chubb, M. Wilson and L. Nelson.

9

terminated.  Lipkovitch has not supported her allegations that the employees who either resigned or retired, were given the choice to resign or retire.  Lipkovitch has not alleged that she and the identified employees had the same decision maker.  Other than Tillman, who resigned after Lipkovitch was terminated in 2011, it appears that the rest of the males identified by Lipkovitch were disciplined under different Sheriffs.  Napoleon did not become the Sheriff until July 2009.[2] (Doc. 20, Ex. 16)

Under the Title VII burden shifting analysis, Lipkovitch is unable to identify any similarly situated male employees with the same decision maker and that the charges were similar in nature and seriousness.  Lipkovitch's gender discrimination claims under § 1983 and ELCRA.  As to Lipkovitch's race discrimination claim, if any remain, the Court finds she has failed to establish similarly situated employees.  The only White employee she identified in her response was Flannery, who was suspended and retired in 1991 or 1992, well before Napoleon became the Sheriff of Wayne County.  Lipkovitch's race discrimination claims under § 1983 and ELCRA must be dismissed as well.  Counts II and III are dismissed.

### 3. Count IV, Breach of Duty under Art. 1, § 17 of State of Michigan Constitution to Conduct Fair and Just Investigation

The Wayne County Defendants seek to dismiss this claim because the Michigan Supreme Court has held that only claims against the State of Michigan can be raised under this article, citing *Jones v. Powell,* 462 Mich. 329 (2000); *Smith v. Michigan,* 256 F.Supp.2d 704, 706-07 (E.D. Mich. 2003).  In response, Lipkovitch argues that her due process claims under the Michigan Constitution

---

[2] Bullox was terminated in 2005; Nunn was terminated in 2005; Merriwether resigned in 2005; Flannery was suspended in 1992; Davis was suspended in 1998; and Woltz was suspended in 2007.  Tillman resigned in 2011, which was after Lipkovitch's termination in 2010.

are not limited by the Michigan Supreme Court in that her claims arise out of the Wayne County Defendants' policies and customs, without citing any support. The Michigan Supreme Court in *Jones* held that the Michigan Constitution does not provide for an action against a municipality or an individual government employee and that any action under the Michigan Constitution is only as to the state in appropriate cases. *Jones,* 462 Mich. at 336. The State of Michigan is not named in Lipkovitch's Complaint. Any allegations for violation of the Michigan Constitution against the Wayne County Defendants must be dismissed. Count IV is dismissed.

### 4. Count V, Violation of Plaintiff's Liberty and Property Interest in Violation of the 14th Amendment

The Wayne County Defendants seek to dismiss Lipkovitch's Due Process Violation claim under the 14th Amendment of the United States constitution since she was afforded Due Process in her termination. The Wayne County Defendants argue that Lipkovitch was covered by a union contract with a grievance procedure providing for a pre-termination discipline review hearing and provisions allowing for post-termination arbitration before a neutral arbitrator. (Doc. No. 20, Ex. 14) In response, Lipkovitch claims that she could not sufficiently respond and prepare an adequate defense, that the charges against her were excessive and flawed, and that her pre-termination hearing was defective because she lacked effective representation and the tribunal lacked impartiality.

Due process requires some sort of pretermination hearing, the formality of which depends upon the importance of the interest and the nature of the subsequent proceedings. *Farhat v. Jopke,* 370 F.3d 580, 595 (6th Cir. 2004). A full evidentiary hearing is not required prior to termination, but the pretermination hearing is to provide an initial check against mistaken conclusions. *Id., citing Cleveland Board of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985). The essential elements required for due process are notice and an opportunity to respond, either in writing or in person. *Farhat,* 370

F.3d at 595.

The Sixth Circuit has held that prior to termination of a public employee who has a property interest in his/her employment, the due process clause requires that the employee be given "oral or written notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer." *Id. (citation omitted).* To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee. *Id.* There is no requirement under the Constitution at the pretermination stage for a neutral and impartial decision maker. *Id.* Where there is a system of post-termination procedures available to the employee that includes a neutral decision maker and/or arbitration, coupled with a pre-termination "right of reply" hearing, then the employee has received all the due process required under the Constitution. *Id.* at 596. The grievance procedures provided by a collective bargaining agreement can satisfy a plaintiff's entitlement to post-deprivation due process rights. *Id.* Even though the union declines to represent an employee, if the employee is able to move forward to a post-termination arbitration, without representation, there is no procedural due process violation against the municipality. *Id.* at 597-98.

In this case, the parties agree that the CBA between Wayne County and the POAM governed the employment relation between Lipkovitch and Wayne County. (Doc. 20, Ex. 14) Art. 9 of the CBA provides for the disciplinary procedures, including an Administrative Review and Determination Hearing and post-termination Arbitration. (Doc. 20, Ex. 14, pp. 15-22) Lipkovitch received a written notice of the charges against her and participated in two pre-termination hearings. Lipkovitch had the opportunity to present evidence at the hearings. Lipkovitch did in fact submit a written statement in response to the initial meeting with IA.

The notice and pre-termination hearings satisfy the requirements under the Due Process clause. Although Lipkovitch argues that the hearing officer was biased, as noted above, at the pre-termination stage, there is no requirement for a neutral and impartial decision maker. In addition to the pre-termination hearings, the CBA also provided for a post-termination arbitration proceeding, which satisfies the Due Process clause. Lipkovitch chose not to move forward to the arbitration proceedings, without union representation. Lipkovitch's due process claim in Count V must be dismissed.

### 5.     Count VI, Selective Enforcement

The Wayne County Defendants move to dismiss Count VI, the Selective Enforcement claim arguing that this claim only arises out of a criminal prosecution. Lipkovitch's response essentially raises a discrimination claim–that she was targeted because she is African-American woman.

Selective enforcement claims are judged according to ordinary Equal Protection standards, which require a plaintiff to show both a discriminatory purpose and a discriminatory effect. *Gardenshire v. Schubert,* 205 F.3d 303, 318 (6th Cir. 2000). Claims of selective enforcement arise as a defense in criminal proceedings. *Id.* "In this context, the court should dismiss a case, or take other appropriate action, if the defendant can prove that the prosecutor or investigator intentionally singled him out for punishment because of membership in a protected group or the exercise of a constitutionally protected right." *Id.* The Sixth Circuit has established a three-part test for determine if selective enforcement has occurred: 1) an official must single out a person belonging to an identifiable group (race or religion or a group exercising constitutional rights) for prosecution even though the prosecutor has decided not to prosecute persons not belonging to that group in similar situations; 2) the official must initiate the prosecution with a discriminatory purpose; and 3)

the prosecution must have a discriminatory effect on the group which the defendant belongs to. *Id.* at 319.

Lipkovitch has failed to state a claim under the Selective Enforcement claim because there are no facts alleged that she was prosecuted for or arrested on any criminal charges. Count VI must be dismissed.

### 6. Municipal Liability and Qualified Immunity

The Wayne County Defendants argue that Wayne County is entitled to municipal liability and Napoleon is entitled to qualified immunity. Lipkovitch responds that under Michigan's government immunity statute, M.C.L. § 37.2101 *et seq.* the Wayne County Defendants are not entitled to "governmental immunity." Lipkovitch's citation to Michigan's governmental immunity statute is not applicable to the claims against the Wayne County Defendants which are based on federal claims.

For the reasons set forth above, the claims are dismissed as to the Wayne County Defendants on the substantive claims. In addition, these Defendants are not liable under § 1983. In order for a municipality to be liable under Section 1983 there must be some evidence that "execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). "[A] municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. Generally, the doctrine of *respondeat superior* has no application in a § 1983 claim absent an allegation that the defendants were following the government's policies or customs. *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982). Rather,

"the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." *Monell,* 436 U.S. at 690.

The Supreme Court has indicated that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986). However, "an 'official policy' is one adopted by someone with 'final authority to establish municipal policy *with respect to the action ordered.*' " *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 515 (6th Cir.1991) (quoting *Pembaur,* 475 U.S. at 481) (emphasis added). In other words, "[l]iability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy." *Id.* A municipal employee is not a "final policymaker" unless his decisions "are final and unreviewable and are not constrained by the official policies of superior officials." *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.1993).

In this case, Wayne County and Sheriff Napoleon are not liable under *Monell* since Lipkovitch has not established that Wayne County and Napoleon as Sheriff had policies and customs to deprive Lipkovitch of her constitutional rights relating to her employment. Lipkovitch's allegations, which the Court has dismissed above, arise out of her termination.

    **D.**    **POAM's Motion for Summary Judgment**

          **1.**    **Breach of Duty of Fair Representation, Count VII (POAM)**

The POAM argues that the claims against it are governed by Michigan law, the Public Employment Relations Act ("PERA"), M.C.L. § 423.201 *et seq.* and not by the Labor Management Relations Act ("LMRA"), 28 U.S.C. §§ 152, 185 as alleged by Lipkovitch in her Complaint. (Comp., ¶¶ 7-8) Lipkovitch does not necessarily dispute POAM's argument that Wayne County

15

is not covered under the LMRA. Lipkovitch asserts that the dismissal should be without prejudice because she states a claim under PERA which she will pursue in State Court.

The LMRA defines an employer as:

> The term "employer" includes any person acting as an agent of an employer, directly or indirectly, but *shall not include* the United States or any wholly owned government corporation or any federal reserve bank, or *any state or political subdivision thereof*, ...

28 U.S.C. § 152(2). Wayne County is a political subdivision of the State of Michigan. M.C.L. § 691.1401(a) and (e). The LMRA does not govern the breach of duty of representation claim alleged by Lipkovitch in her Complaint. Count VII must be dismissed.

The Court declines to address the claim in this case under PERA since Lipkovitch did not allege such a claim in her Complaint. The dismissal is with prejudice as to a breach of duty of representation claim under the LMRA. As noted above, Lipkovitch did file a second lawsuit against POAM asserting a breach of duty of representation claim under PERA.

### 2.     Count VIII, Failure to Investigate

Because Lipkovitch has failed to state a claim under the LMRA, the failure to investigate claim must also be dismissed. Under the LMRA, a violation of the duty of fair representation arises when a union's conduct is "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 67-68 (1991). A failure to investigate allegation falls under the alleged conduct of "arbitrary, discriminatory, or in bad faith." *Sudderth v. Alreco Metals, Inc.,* 839 F.Supp. 1267, 1272 (W.D. Mich. 1993); *Danton v. Brighton Hosp.,* 335 F3d. Appx. 580, 585 (6th Cir. Jul. 1, 2009).

### E.    Plaintiff's Motion to Dismiss State Law Claims

Lipkovitch asserts that she has now filed an action before the Wayne County Circuit Court

asserting state law claims against the same Defendants. Lipkovitch claims that the Court should dismiss the state law claims alleged in this Complaint.

Defendants respond arguing that the second lawsuit has now been removed to this Court and that the Court should exercise pendent jurisdiction under 28 U.S.C. § 1367 over the state law claims.

The only state law claims alleged in Lipkovitch's Complaint in this case are the Michgian Elliott-Larsen Civil Rights claim in Count III and the Michigan Constitution claim in Count IV. As acknowledged by Lipkovitch in her Motion to Dismiss, the Court has pendant jurisdiction over these two claims, and the Court chooses to exercise pendent jurisdiction over these two claims. It is noted that the Defendants filed their dispositive motions and Lipkovitch filed her responses to the motions prior to Lipkovitch filing the instant motion. Although Lipkovitch may have a claim under PERA, as this Court noted above, Plaintiff did not so allege in this Complaint. The Court only addressed the claim under the LMRA. The Court denies the Motion to Dismiss the State Law Claims.

### F. Motion to Remand to Wayne County as Case Improvidently Removed

Lipkovitch filed a Motion to Remand to Wayne County as Case was Improvidently Removed. No response was filed to this motion in this docket. It appears that this motion was inadvertently filed in this case number. Lipkovitch also filed such a motion in her second lawsuit. A motion to remand must be made within 30 days "after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). Remand is not appropriate in this case since this lawsuit was originally filed with this Court, not removed from State Court. The Motion to Remand is denied as it relates to claims in this case.

### III. CONCLUSION

For the reasons set forth above,

17

IT IS ORDERED that the Motion to Dismiss/Summary Judgment filed by Defendants County of Wayne and Benny Napoleon **(Doc. No. 20)** is GRANTED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment filed by Defendant Police Officers Association of Michigan **(Doc. No. 15)** is GRANTED as to the claims under the LMRA.

IT IS FURTHER ORDERED that the Motion to Dismiss Plaintiff's State Law Claims **(Doc. No. 25)** is DENIED.

IT IS FURTHER ORDERED that the Motion to Remand to Wayne County as Case was Improvidently Removed **(Doc. No. 29)** is DENIED.

IT IS FURTHER ORDERED that this action, as to all Defendants, is DISMISSED with prejudice.

                                      S/Denise Page Hood
                                      Denise Page Hood
                                      United States District Judge

Dated: September 30, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2012, by electronic and/or ordinary mail.

                                      S/LaShawn R. Saulsberry
                                      Case Manager